UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lonnie Kevin Clark, | File No. 19-cv-2802 (ECT/TNL) |
| Plaintiff, | |
| v. | |
| State of Minnesota Department of Public Safety and Driver and Vehicle Services; Dawn Olson, Director Driver and Vehicle Services – State of Minnesota Department of Public Safety; Andrea Fasbender, Driver Services Director – State of Minnesota Department of Public Safety; and Leigh, Agent 2860, | **OPINION AND ORDER** |
| Defendants. | |

Lonnie Kevin Clark, *pro se*.

Stephen D. Melchionne, Minnesota Attorney General's Office, Saint Paul, MN, for Defendants State of Minnesota Department of Public Safety and Driver and Vehicle Services, Dawn Olson, Andrea Fasbender, and Leigh, Agent 2860.

Pro se Plaintiff Lonnie Kevin Clark commenced this case in October 2019, asserting that the continued revocation of his driver's license and imposition of reinstatement fees and requirements following dismissal of his related criminal case violates his constitutional rights. Defendants have moved to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' motion will be granted because Clark's

claims are largely barred by the Eleventh Amendment and Clark has not otherwise plausibly pleaded a claim upon which relief can be granted.[1]

I

Clark's driver's license was administratively revoked on November 19, 2003, pursuant to Minnesota's implied consent law, Minn. Stat. § 169A.50–.53, after he was arrested for driving while impaired one week earlier. Compl. at. 4 [ECF No. 1]; *id.*, Ex. 1 at 5–6 [ECF No. 1-1]; Melchionne Aff., Ex. A [ECF No. 12-1]. Clark disputed the lawfulness of the arrest and resulting criminal charge. Compl. at 4. On January 16, 2018, a judge in Hennepin County District Court dismissed the criminal case arising from Clark's arrest on the ground that his constitutional right to a speedy trial had been violated based on the state's delay in prosecuting the case. *Id.*; *see id.*, Ex. 1 at 15–26. Following the dismissal, Clark sought reinstatement of his driver's license from the Minnesota Department of Public Safety's Driver and Vehicle Services division, a process which required him, in part, to pay a $680 reinstatement fee. Clark disputed the fee on the basis that dismissal of his related criminal case meant he was not subject to the fee. Compl. at

---

[1] Clark previously requested and received two extensions of his deadline to respond to Defendants' motion. ECF Nos. 22, 24. Clark's third request for an extension was denied because he did not show "good cause" that would warrant an extension, but the order made clear that Clark's failure to file a response would not alone result in the granting of Defendants' motion. ECF No. 26. Clark appealed the denial of his request to the Eighth Circuit Court of Appeals, but his appeal was dismissed for lack of jurisdiction as it was premature. ECF Nos. 27, 30. Clark has now filed a fourth request for a 30 to 60-day extension to respond to Defendants' motion due to restrictions in place during the COVID-19 pandemic that have limited his ability to access computer and printer services at a public library. ECF No. 35 at 1–2. Clark does not present any new circumstances from which to conclude his request should now be granted due to "excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B). Clark's Request for Continuance [ECF No. 35] is therefore denied.

4. On November 2, 2018, Defendant Dawn Olson sent Clark a letter explaining that "the civil administrative action was not dismissed." *Id.*, Ex. 1 at 5. Olson further explained that the Commissioner of Public Safety was statutorily required to revoke his driving privileges because "[t]he peace office[r] had probable cause to believe that [he] had been operating a motor vehicle while impaired, [he] submitted to a test, and the breath test [he] provided had an alcohol concentration of 0.12, greater than 0.08."[2] *Id.* Olson informed Clark that "DVS sent notice to [his] last known address on record after receiving notification of the 11/12/2003 incident" which "stated [his] rights to obtain judicial and administrative review" and that he "did not request a judicial or administrative review and the action taken by DVS was correct." *Id.*

Clark again contacted Driver and Vehicle Services about the status of his driving privileges. *See id.* at 7. On March 4, 2019, Clark received a letter from Defendant Andrea Fasbender informing him that because "there was no request for an implied consent hearing challenging the violation, the revocation of [his] driving privileges and the $680.00 reinstatement fee from the November 12, 2003 incident are correct." *Id.* at 7–8. Fasbender also informed Clark that he needed to complete the following requirements to reinstate his driving privileges and regain his instruction permit:

---

[2] At the time of Clark's arrest, Minnesota law prohibited a person from driving "when the person's alcohol concentration at the time, or as measured within two hours of the time, of driving, operating, or being in physical control of the motor vehicle is 0.10 or more[.]" Minn. Stat. § 169A.20, subd. 1(5) (2003). Accordingly, the implied consent statute at the time reflected the .10 limit in its license revocation provision. Minn. Stat. § 169A.52, subd. 4(a) (2003). Olson's letter references the current limit of .08. Given that Clark's breath test revealed an alcohol concentration of .12, this discrepancy is of no consequence with respect to the revocation of his driver's license.

- Pass the DWI written test.
- Pass the Class D written test.
- Pay the $680.00 reinstatement fee. You have been approved to participate in partial pay program. This allows you to pay in two installments. $395 at the time of application, and $345 within the following two years.
- Apply for a new instruction permit.
- Provide a satisfactory physician's statement verifying your medical fitness to drive.

*Id.* at 7.

In October 2019, Clark emailed Olson, Fasbender, and Driver and Vehicle Services to inform them that he would be filing a lawsuit in federal district court "for the frivolous and unnecessary fines being imposed by the Department of Public Safety inconsistent with the Hennepin County court order dismissing what legal charges were brought against me." *Id.* at 10–14. A Driver and Vehicle Services agent, Defendant Leigh, Agent 2860, responded and reiterated that Driver and Vehicle Services was "unable to waive the reinstatement requirements" because dismissal of his criminal case did "not impact or affect" the civil penalties imposed under Minnesota's implied consent law. *Id.* at 10. Clark responded, again challenging Defendants' position and reiterating his intent to file suit. *Id.* at 9.

II

Absent waiver of immunity by the State or a valid congressional override, the Eleventh Amendment bars suit against a state or state agency "for any kind of relief." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *see also Doe v. Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003) ("The Eleventh Amendment provides states, and state agencies, with immunity . . . from suits brought by their own citizens." (internal citation

4

omitted)).  The Eleventh Amendment also bars claims for damages against state employees in their official capacities.  *Graham*, 473 U.S. at 169; *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).  This is because "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining a suit against a state official in his or her official capacity "is no different from a suit against the State itself.").  But, under the doctrine established in *Ex parte Young*, 209 U.S. 123 (1908), "state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law."  *Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002) (citing *Ex parte Young*, 209 U.S. at 159–60); *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (quotation omitted)).

Here, Clark seeks damages in the amount of $80,000 as well as a waiver of the requirements for reinstating his driver's license.  Compl. at 7.  Clark's claims against Defendant State of Minnesota Department of Public Safety and Driver and Vehicle Services, a state agency, are barred in their entirety by the Eleventh Amendment and therefore must be dismissed.  Clark's claims for monetary damages against Defendants

Dawn Olson, Andrea Fasbender, and Leigh, Agent 2860,[3] must also be dismissed for the same reason.

### III

Clark also has not plausibly pleaded a violation of his constitutional rights. In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S .at 556). Pro se complaints are to be construed liberally, but "they still

---

[3] Clark is understood to be suing Defendants Dawn Olson, Andrea Fasbender, and Leigh, Agent 2860, only in their official capacities as employees of Driver and Vehicle Services. "Official-capacity suits typically involve either allegedly unconstitutional state policies or unconstitutional actions taken by state agents possessing final authority over a particular decision." *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). In contrast, individual-capacity suits generally "involve actions taken by government agents outside the scope of their official duties." *Id.* Though Clark does not expressly state in his complaint the capacity in which he is suing these defendants, he lists them as parties to the case using their official titles, *see* Compl. at 2, and describes actions taken by these defendants in their roles as employees of Driver and Vehicle Services, *id.* at 4–5. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (explaining that in 42 U.S.C. § 1983 actions "it will be assumed that the defendant is sued only in his or her official capacity" when a plaintiff does not "expressly and unambiguously" state in the pleadings that a public official is being sued in his or her individual capacity).

must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citation omitted).[4]

A

Clark's principal claim is that the continued revocation of his driver's license and imposition of the reinstatement fee violates his constitutional right to due process because it is "inconsistent" with the dismissal of his criminal case. Compl. ¶ 4; *see id.* at 4–5. But Minnesota law provides two independent processes for revoking a person's driver's license as a result of driving while impaired. Minnesota's civil implied consent law requires administrative revocation of a person's driver's license

> [u]pon certification by the peace officer that there existed probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired) and that the person submitted to a test and the test results indicate an alcohol concentration of 0.08[5] or more . . . .

---

[4]  Ordinarily, courts do not consider matters outside the pleadings in resolving a Rule 12(b)(6) motion to dismiss, *see* Fed. R. Civ. P. 12(d), but documents that are necessarily embraced by the pleadings may be considered without transforming the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) (citation omitted). Materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). Clark filed materials related to his criminal case and communications with Driver and Vehicle Services with his complaint. ECF No. 1-1. Likewise, Defendants filed an implied consent certificate completed by a peace officer at the time of Clark's DWI arrest with an affidavit in support of their motion to dismiss. ECF No. 12-1. In his fourth request for an extension, Clark challenges the admissibility of the certificate but not its authenticity. *See* ECF No. 35 at 3. Because these materials are embraced by the complaint and no party has questioned their authenticity, they are properly considered in reviewing Defendants' motion.

[5]  *See supra* at 3 n.2.

7

Minn. Stat. § 169A.52, subd. 4(a). Administrative revocation under this provision occurs without regard to any future criminal proceeding that may arise out of the same incident. Separately, Minnesota law also mandates revocation of a driver's license if a person is convicted of the criminal offense of driving while impaired. Minn. Stat. § 169A.54. Here, Clark's license was revoked through the civil administrative process based on a certification by a peace officer and his test failure, not as the result of any criminal proceedings. *See* ECF No. 12-1. Consequently, the dismissal of his criminal case has no bearing on the continued revocation of his driver's license. Contrary to Clark's assertions, the dismissal did not, and could not, affect Driver and Vehicle Services' imposition of the reinstatement fee and requirements. *See* Minn. Stat. § 171.29, subd. 2(b) (requiring collection of a $680 fee for reinstatement of a driver's license following administrative revocation pursuant to Minn. Stat. § 169A.52). Further, to the extent that Clark seeks to assert a claim that the revocation provision in Minnesota's implied consent law violates due process, the United States Supreme Court has upheld the constitutionality of this type of provision, *see Mackey v. Montrym*, 443 U.S. 1, 12–13 (1979), and Clark's allegation that this process may be inconsistent with the outcome of a criminal proceeding is insufficient to support such a claim.[6]

---

[6]    To the extent that Clark may seek to challenge the initial revocation of his driver's license, he cannot do so now. Minnesota's implied consent law allows a person to seek administrative or judicial review of a license revocation following receipt of a notice and order of revocation. Minn. Stat. § 169A.53. "If mailed, the notice and order of revocation . . . is deemed received three days after mailing to the last known address of the person." Minn. Stat. § 169A.52, subd. 6. The record indicates that Driver and Vehicle Services mailed Clark a notice of revocation explaining his right to seek review. Compl., Ex. 1 at

B

Clark's complaint also can be read to include a claim that the $680 reinstatement fee is an excessive fine prohibited by the Eighth Amendment. Compl. ¶ 4; *see id.* at 4, Ex. 1 at 1–4. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 609–10 (1993)); *see Timbs v. Indiana*, 139 S. Ct. 682, 686–89 (2019) (holding the Excessive Fines Clause is an incorporated protection applicable to the States under the Due Process Clause of the Fourteenth Amendment). The protections of the Excessive Fines Clause can extend to civil fines, including forfeitures. *Hudson v. United States*, 522 U.S. 93, 103 (1997); *cf. Timbs*, 139 S. Ct. at 689–90 (declining to reconsider prior holding "that civil *in rem* forfeitures are fines for purposes of the Eighth Amendment when they are at least partially punitive" when State had not previously argued that civil forfeitures "were categorically beyond the reach

---

5–6. Clark had 30 days following receipt of the notice to file a petition for judicial review. Minn. Stat. § 169A.53, subd. 2 (2003). There is no evidence that Clark made a timely challenge to the revocation of his driver's license, and he does not claim that he did. *See* Compl., Ex. 1 at 7–8. Allowing Clark to seek judicial review of his initial revocation now would be contrary to the general rule that *res judicata* effect is given to final decisions in administrative proceedings. *See Hester v. Redwood Cty.*, No. 11-cv-1690 (ADM/JJK), 2012 WL 863730, at *7 (D. Minn. Mar. 13, 2012) (citing *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 789 (1986)). Because Clark did not exercise his right to administrative or judicial review, the revocation order is a final administrative decision entitled to *res judicata* effect, and "this Court will not now assume the state agency's role of fact-finding and making legal determinations." *Id.*

of the Excessive Fines Clause"). A sanction which serves a solely remedial purpose is not subject to the Excessive Fines Clause; it must, at least in part, serve some deterrent or retributive purpose. *See Austin*, 509 U.S. at 609–10; *see also United States v. Mackby*, 261 F.3d 821, 829 (9th Cir. 2001) ("In determining whether a civil sanction is punitive or remedial, the court considers factors such as the language of the statute creating the sanction, the sanction's purpose(s), the circumstances in which the sanction can be imposed, and the historical understanding of the sanction." (quotation omitted)). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." *Bajakajian*, 524 U.S. at 334. To prove that a fine is excessive under the Eighth Amendment, a party must show that it is grossly disproportionate to the gravity of the offense. *House v. Campion*, No. 08-cv-2917 (RHK/JJK), 2009 WL 1850874, at *9 (D. Minn. June 25, 2009), *aff'd*, 367 F. App'x 726 (8th Cir. 2010); *see Bajakajian*, 524 U.S. at 334–37.

Minnesota law imposes a $250 fee plus a $430 surcharge on "[a] person whose driver's license has been revoked . . . under section 169A.52." Minn. Stat. § 171.29, subd. 2(b). The fee and surcharge are distributed pursuant to the terms of the statute, which allocates revenue to driver services, laboratory costs, costs of handling vehicle forfeitures, support for persons who have experienced traumatic brain and spinal cord injury, and costs of remote electronic alcohol monitoring, among other purposes. *Id.*, subd. 2(b)–(d). At least some of these uses suggest that the reinstatement fee serves a remedial purpose. But assuming without deciding that the $680 reinstatement fee is a "fine" subject to the Excessive Fines Clause, Clark has not pleaded any facts from which it can be inferred that

10

this amount is grossly disproportionate to the offense of driving while impaired. *See House*, 2009 WL 1850874, at *9 ("The gravity of the driving-while-impaired offense dwarfs the fee imposed by the State of Minnesota for Plaintiff's offense."). Clark refers to the reinstatement fee as "an excessive fine & legal expense," Compl. at 4, but provides no additional facts to support an Eighth Amendment claim. Accordingly, dismissal of this claim is appropriate.[7]

---

[7] Clark also cannot sustain a claim under the Eighth Amendment based on the continued revocation of his driver's license. District courts that have addressed the issue have determined that revocation is not a sanction that falls within the protections of the Excessive Fines Clause. *See, e.g.*, *Sessler v. Crawford Cnty. Child Support Enf't Agency*, No. 1:14-CV-0058, 2014 WL 3014513, at *4 (N.D. Ohio July 3, 2014) (concluding the temporary revocation of plaintiff's driver's license was not a "fine" subject to the Excessive Fines Clause because it was not a "payment in cash or in kind" and plaintiff could obtain reinstatement by paying child support arrearage); *Faulk v. Tiffany*, No. CIV.A.99-2354-GTV, 2000 WL 714336, at *4 (D. Kan. May 23, 2000) (concluding the temporary revocation of plaintiff's driver's license pursuant to a state habitual traffic violators statute was not a "fine" because it did not constitute "a payment in cash or in kind" but that, if it did, it was not so grossly disproportional as to be unconstitutional).

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion to Dismiss [ECF No. 9] is **GRANTED**;

2. Plaintiff's claims against Defendant State of Minnesota Department of Public Safety and Driver and Vehicle Services are **DISMISSED** in their entirety without prejudice;

3. Plaintiff's claims for monetary damages against Defendants Dawn Olson, Andrea Fasbender, and Leigh, Agent 2860, are **DISMISSED** without prejudice; and

4. Plaintiff's claims for prospective relief under the Due Process Clause and the Excessive Fines Clause seeking waiver of the requirements to reinstate his driver's license are **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 1, 2020          s/ Eric C. Tostrud
                                   Eric C. Tostrud
                                   United States District Court